FILED IN MY OFFICE
DISTRICT COURT CLERK
6/2/2017 2:15:13 PM
James A. Noel
Latoya Grayes

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

AMERICAN PROPERTY--MANAGEMENT
CORPORATION, a New Mexico corporation,
D/B/A ESPLENDOR RESORT AT RIO RICO,

    **Plaintiff**

v.                                                                                       No. D-202-CV-2017-03940

**LIBERTY MUTUAL GROUP, INC.,**

    **Defendant.**

## COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND UNFAIR CLAIMS AND TRADE PRACTICES

COME NOW Plaintiff, through undersigned counsel, and bring this complaint for damages as a result of Defendant's breach of contract, bad faith, and unfair claims and trade practices as prohibited by the law of the State of New Mexico. In support of this Complaint, Plaintiff allege the following:

### PARTIES, JURISDICTION AND VENUE

1. American Property--Management Corporation ("American Property Management") is a New Mexico Corporation, in good standing, with its principal place of business located in Albuquerque, New Mexico.

2. James Long is the Director of American Property Management Corporation and is a resident of Albuquerque, New Mexico.

3. Liberty Mutual Group, Inc. ("Liberty Mutual") is a corporation with its principal place of business in Boston, Massachusetts, providing insurance policies across the United States and with local offices in New Mexico.

4. This Court has jurisdiction over the subject matter and the parties to the action as Plaintiff's claims arise under the laws of the State of New Mexico, Plaintiff is a resident of Bernalillo County, New Mexico and Defendant regularly conducts business in New Mexico.

5. Venue is proper in this Court pursuant to NMSA 1978 § 38-3-1 as Plaintiff is a resident of Bernalillo County and Defendant regularly conducts business within Bernalillo County.

## FACTS COMMON TO ALL CLAIMS

6. American Property Management, as the name suggests, is a property management company that manages a number of hotel properties, including the Esplendor Resort at Rio Rico ("Esplendor") located in Rio Rico, Arizona.

7. American Property Management signed an RM Select Policy ("Policy") with Liberty Mutual, effective March 1, 2015, to provide coverage of the Esplendor Resort.

8. Included in the Policy was coverage of damage to real and personal property, loss of business income, and certain extra expenses in the event of a covered loss, including fire.

9. In addition to covering property damage, the Policy covered loss of business income and extra expenses incurred during periods of restoration.

10. On June 5, 2015, a large portion of the Esplendor property was damaged by fire.

11. The fire was a covered loss under the Policy.

12. The portion of the property damaged in the fire included Esplendor's lobby, kitchen, dining area, and bar and lounge area.

13. American Property Management filed a claim with Liberty Mutual immediately following the loss.

14. The claim was assigned to Liberty Mutual adjuster Steven Harkness.

15. Mr. Harkness conducted a site inspection on June 9, 2015.

16. To assist in managing its insurance claim, American Property Management hired The Greenspan Company ("Greenspan"), an independent insurance adjustment company, on June 12, 2015.

17. American Property Management provided notice to Liberty Mutual, through Liberty Mutual's adjuster Steven Harkness, that the Greenspan adjuster would be American Property Management's representative and serve as point of contact for its claim.

18. American Property Management timely complied with all of its duties under the Policy, including notifying Liberty Mutual of the loss, allowing inspection of the property, and keeping a record of all repair costs and proposed costs.

19. American Property Management provided Liberty Mutual with a description of the property damaged by the fire and submitted a building claim within thirty-two days of the loss.

20. Starting on June 15, 2015, American Property Management attempted to coordinate a second site inspection with Liberty Mutual representatives and its own representatives, but Liberty Mutual declined to schedule a site visit until June 23, 2015.

21. Liberty Mutual then postponed the June 23, 2015 site visit and requested all representatives be available the following week, which was unreasonable notice to accommodate the large number of contractors and sub-contractors involved in the site inspection.

22. The site visit was eventually rescheduled for July 13, 2015 to accommodate the numerous contractors, sub-contractors and representatives from both parties.

23. On July 6, 2015, American Property Management submitted a request to Liberty Mutual for an advance against the Business Loss of Income coverage based on lost business for the month of June 2015.

24. On July 7, 2015, Liberty Mutual informed American Property Management that because Liberty Mutual was unable to coordinate a property inspection date where both Liberty Mutual and American Property Management's representatives could be present until July 13, 2015, it would refuse to cover business income loss or extra expenses for the period between June 29, 2015 and July 12, 2015.

25. On July 8, 2015, Mr. Long contacted Liberty Mutual, noting that American Property Management had received no advanced funds in the thirty plus days since the loss, and requested that Liberty Mutual honor its obligations under the Policy.

26. On July 9, 2015, over a month after the loss, Liberty Mutual claimed it was attempting to issue an advance, but still did not identify an amount.

27. On July 9, 2015, American Property Management requested to know the amount of the advance, but Liberty Mutual refused to share this information with its insured, which information would have allowed American Property Management to plan for the disbursement of these funds.

28. Liberty Mutual arranged to have its consultants assess the damage to the property between July 13, 2015 and July 17, 2015.

29. On several occasions, American Property Management requested information about when particular subcontractors would be on site so that they could have their own appraisers attend, but Liberty Mutual refused to disclose this information.

30. On July 13, 2015, American Property Management learned after the fact that Liberty Mutual had a vendor inspect the site's walk-in coolers and laundry machines. American Property Management requested the results of that inspection.

31. On July 14, 2015, over a month after the loss, Liberty Mutual finally issued an advance of $550,000 to cover business interruption, building losses and personal property.

32. On July 14, 2015, American Property Management submitted a claim for building damages with attached proposal to return the property to its pre-loss condition, estimating the cost at approximately $3.5 million dollars.

33. Liberty Mutual failed to respond to the July 14, 2015 proposal so that American Property Management could begin work repairing and restoring the property.

34. American Property Management did not receive the advance from Liberty Mutual to cover business interruption until July 15, 2015.

35. On July 15, 2015, American Property Management provided an estimate of Preliminary and Partial Business Loss of Income for an 18 month time frame, as well as a Preliminary Extra Expense proposal to Liberty Mutual.

36. On July 16, 2015, Liberty Mutual rejected the estimate of Preliminary and Partial Business Loss of Income, claiming it appeared too high, but saying it was unable to know with certainty because of the delay in conducting an analysis of the building – a delay caused by Liberty Mutual.

37.  On July 23, 2015, American Property Management submitted for a second time a request to cover extra expenses related to interim operations, as the first request had not received a response, other than the rejection noted in ¶36 above.

38.  On July 23, 2015, American Property Management submitted a claim for emergency clean-up services under the Policy, and requested payment for such services.

39.  On July 28, 2015, American Property Management requested a telephone conference with Liberty Mutual representatives to discuss Liberty Mutual's failure to respond to numerous requests and estimates.

40.  On that same date, Liberty Mutual responded with a refusal to pay for the extra expense submission, despite the fact that extra expenses were covered by the Policy.

41.  On July 30, 2015, American Property Management requested a date from Liberty Mutual for completion of loss adjustment and an estimated date for repairs to be completed.

42.  On August 2, 2015, Liberty Mutual said it would obtain a minimum of three bids for work on the project and refused to provide any estimated date for completion of adjustment or repair.

43.  Despite multiple requests from American Property Management, Liberty Mutual refused to provide a scope of work for the repairs and reconstruction.

44.  American Property Management requested permission to consider a shutdown of the resort given the delay in repair and reconstruction and the business income loss, loss to reputation, and inability to properly serve its customers.

45.  Despite several requests from American Property Management, Liberty Mutual delayed in responding to the request for a shutdown, forcing the resort to remain open or face a reduction in coverage for "failure to mitigate" its loss under the Policy terms.

46. When Liberty Mutual finally responded to the request, it refused to allow a shutdown and required Esplendor to continue operating under the guise of mitigating its losses, despite Esplendor's inability to provide the services expected by its guests.

47. On August 6, 2015, over two months after the loss, American Property Management and Liberty Mutual reached an agreement to move forward with kitchen repair and operations, and agreed on a bid for cleaning personal property.

48. Liberty Mutual agreed to provide information related to the kitchen operations by August 10, 2015, but Liberty Mutual did not provide the information by this agreed upon date.

49. On August 24, 2015, American Property Management and Liberty Mutual held a conference call to discuss the building plans that American Property Management submitted on July 14, 2015.

50. In August, 2015, Liberty Mutual agreed to provide a response to American Property Management's renewed request to temporarily shut down the resort within 10 days of receiving American Property Management's July income loss documents.

51. Liberty Mutual received the July income loss document on August 30, 2015.

52. Liberty Mutual had not responded to the income loss document as of September 10, 2015.

53. On August 31, 2015, American Property Management submitted a revised proposal for building plans with a reduction in the estimated expense.

54. On September 14, 2015, American Property Management again requested a response regarding its building plan, emphasizing to Liberty Mutual that work could not start without Liberty Mutual's approval.

55. On September 15, 2015, American Property Management's representative again contacted Liberty Mutual to request a response.

56. On September 17, 2015, American Property Management again requested a response from Liberty Mutual regarding the proposed building plan.

57. As of October 12, 2015, Liberty Mutual had still not provided American Property Management with a scope of work that would allow American Property Management to obtain a cost comparison between Liberty Mutual's contractors and American Property Management's contractors.

58. As of October 12, 2015, Liberty Mutual had not responded to a renewed request to shut down operations at Esplendor because of the delay in repairs and reconstruction.

59. After delaying for months, Liberty Mutual refused to agree with American Property Management's submitted building plan.

60. Liberty Mutual did not provide a scope of work for American Property Management to compare with its own scope of work for negotiation purposes until November 23, 2015.

61. When Liberty Mutual finally provided a scope of work on November 23, 2015, the scope of work had no costs listed, so that American Property Management remained unable to negotiate or make a comparison to its own proposed scope of work.

62. Liberty Mutual only sent the scope of work out for bids by contractors after developing the scope of loss, almost six months after the loss.

63. In spite of having no bids of its own, Liberty Mutual repeatedly rejected American Property Management's solicited bids and estimates for repairs and reconstruction as being too high.

64. Liberty Mutual promised to obtain three "competitive" bids for the work needed to restore the Esplendor to its pre-loss condition.

65. Liberty Mutual obtained only two bids for repairs and reconstruction and did not assign a value to American Property Management's claim until June 16, 2016, over a year after the loss occurred.

66. Liberty Mutual disclosed to American Property Management only one of the bids it received, which estimated the claim value at $1,801,694.03.

67. Liberty Mutual failed to disclose to American Property Management a second bid it received which placed the claim value in excess of $4 million.

68. Liberty Mutual intentionally refused to disclose to American Property Management the bid that provided a higher estimate and paid only $1,801,694.03, which was inadequate to restore the property to its pre-loss condition and contrary to American Property Management's proposed building plan, as well as one of the bids received by Liberty Mutual.

69. As the parties continued to negotiate the value of the claim, American Property Management produced documentation from the County of Santa Cruz, where Esplendor is located, stating that the Liberty Mutual building plans needed to be revised to meet current building code requirements.

70. Code upgrade coverage was included in the Policy.

71. Liberty Mutual refused to adjust the claim value or pay for work needed to revise plans to rebuild the property to meet current building codes.

72. Liberty Mutual willfully ignored the governmental requirements and insisted on a building plan that did not meet code requirements, in order to reduce the claim value.

73. In August 2016, Esplendor was forced to close temporarily the delay in reconstruction and repair caused by Liberty Mutual's mismanagement of the claim.

74. In response, Liberty Mutual sent a letter warning that because Esplendor had advertised the shutdown as a complete renovation, American Property Management would be responsible for any additional delay that renovations caused to the restoration of the property damaged by the fire.

75. As of November 16, 2016, Liberty Mutual had not provided loss income payments for the period of June 2016 through October 2016 despite submission of appropriate documentation by American Property Management.

76. Given the delay caused by Liberty Mutual's mismanagement of American Property Management's claim, American Property Management requested an agreement to toll the two year period set forth in the Policy in which to complete reconstruction in order to be compensated at replacement cost.

77. Liberty Mutual has refused to extend the two-year period for reconstruction at replacement cost under the Policy.

78. American Property Management remains unable to restore, repair and rebuild its damaged property because of repeated delays by Liberty Mutual and its repeated refusals to accept reasonable estimates and bids to restore the property to its original condition.

79. Liberty Mutual has intentionally and willfully delayed the claims process to prevent paying American Property Management for repairs at replacement cost.

### Count I – Bad Faith

80. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

81. Liberty Mutual has a duty as an insurer to deal fairly with its policyholder.

82. Fair dealing means to act honestly and in good faith in the performance of the contract.

83. Liberty Mutual has a duty to act reasonably in deciding whether to pay a claim.

84. Liberty Mutual has a duty to conduct a timely and fair investigation and evaluation of claims submitted by its insureds.

85. Liberty Mutual failed to conduct a timely evaluation of this claim.

86. Liberty Mutual failed to conduct a fair investigation and evaluation of this claim by refusing to pay the reasonable replacement cost of Plaintiff's lost and damaged personal and real property when it concealed from its insured higher bids submitted to repair and restore the property.

87. Liberty Mutual failed to produce all of the bids it received for repair and restoration of the property, intentionally concealing the higher bid from American Property Management in order to undervalue the claim.

88. Liberty Mutual failed to conduct a fair evaluation of this claim by refusing to acknowledge mandatory building code requirements and refusing to adjust its bid to cover code upgrades as required by the Policy.

89. Liberty Mutual has continued to intentionally and willfully delay the claims process to make it impossible to comply with the two year rebuilding requirement contained in the policy and avoid paying for repairs and reconstruction at replacement cost.

90. As a result of Liberty Mutual's bad faith, Plaintiff has been unable to rebuild a significant portion of its resort and has suffered financial damages, as well as damages to reputation and brand.

### Count II – Breach of Contract

91. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

92. A policy of insurance is a contract.

93. In New Mexico there exists a covenant and a duty of good faith and fair dealing in every insurance contract.

94. Under the Policy, Liberty Mutual is obligated to pay for covered losses at replacement cost if repairs or replacement takes place within two years of a loss.

95. Liberty Mutual failed to pay or agree to pay reasonable replacement costs based on third-party estimates.

96. Liberty Mutual intentionally delayed the adjustment of this loss to make compliance within the two year period impossible.

97. Liberty Mutual committed a material breach of the insurance contract by failing to pay the replacement costs that would allow Plaintiff to rebuild and by making it impossible to repair and rebuild the property within the timeframe specified in the policy.

98. As a result of Liberty Mutual's intentional, willful, wanton and malicious breach of contract, Plaintiff has suffered damages including, but not limited to, loss of business, loss of income, unnecessary expenses, and attorneys' fees and costs.

99. As a result of Liberty Mutual's conduct, Plaintiff is entitled to an award of actual and punitive damages as well as an award of attorneys' fees and costs.

## Count III – Unfair Trade Practices

100. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

101. Liberty Mutual is a corporation engaged in trade or commerce that offers its goods and services to citizens of the State of New Mexico, including Plaintiff.

102. Liberty Mutual has willfully engaged in unfair and deceptive trade practices including, but not limited to, failing to deliver the quality or quantity of goods or services contracted for.

103. In particular, the services Plaintiff has received with regard to adjustment of its claim are grossly disparate from those described in the Policy.

104. As a result of Liberty Mutual's unfair and deceptive trade practices, Plaintiff has suffered actual damages and incurred attorneys' fees and costs.

105. As a result of Liberty Mutual's conduct, Plaintiff is entitled to an award of actual damages, and up to three times actual damages, as well as attorneys' fees and costs pursuant to NMSA 1978 § 57-12-10.

### County IV – Unfair Claims Practices

106. Plaintiff incorporates the preceding paragraphs as if fully stated herein.

107. New Mexico prohibits by statute certain unfair claims practices.

108. Liberty Mutual's conduct as described above violated New Mexico's unfair claims practices statute in ways which include, but are not limited to the following:

    a. Misrepresenting pertinent facts relating to coverage by concealing certain bids;

    b. Failing to act reasonably promptly on communications with respect to claims from American Property Management under its policy and requiring constant follow up from American Property Management and its representatives; and

    c. Failing to adopt and implement reasonable standards for the prompt investigation and processing of American Property Management's claim under its policy.

109. As a result of Liberty Mutual's unfair and deceptive claims practices, Plaintiff has suffered financial damages as well as damage to reputation and brand.

110. As a result of Liberty Mutual's willful conduct, Plaintiff is entitled to an award of actual damages as well as attorneys' fees and costs.

WHEREFORE, Plaintiff prays Judgment against the Defendant in a reasonable sum to be determined by a jury at trial as allowed under New Mexico law and for punitive damages against Defendant, as well as attorneys' costs and fees, prejudgment and post-judgment interest and any and all other appropriate relief.

        Respectfully submitted,

        ROBLES, RAEL & ANAYA, P.C.

By:    */s/ Marcus Rael*
       Marcus J. Rael, Jr.
       Lindsay R. Drennan
       Attorneys for Plaintiff
       500 Marquette Ave., NW, Suite 700
       Albuquerque, New Mexico 87102
       (505) 242-2228
       (505) 242-1106 (facsimile)